**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Samuel Lokensgard,

Plaintiff,

v.

Constellation, Inc. and Curi Holdings, Inc.,

Defendants.

File No. 24-CV-1498 (JMB/EMB)

**ORDER**

---

Cassie C. Navarro and Kaarin Nelson Schaffer, Nelson Schaffer, PLLC, Minneapolis, MN, for Plaintiff Samuel Lokensgard.

David M. Wilk, Mark A. Solheim, and Nicholas Andrew Rauch, Larson King, LLP, St. Paul, MN, for Defendants Constellation, Inc., and Curi Holdings, Inc.

---

In April 2024, Plaintiff Sam Lokensgard filed his Complaint against Defendant Constellation, Inc. and Defendant Curi Holdings, Inc. (together, Defendant)[1] asserting six claims for violations of the Family & Medical Leave Act (FMLA), the Minnesota Parenting Leave Act (MPLA), and the Minnesota Human Rights Act (MHRA). (*See generally* Doc. No. 1-1.) This matter is now before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 21.) For the reasons explained below, the Court grants Defendant's motion in part and denies it in part.

[1] The parties agree that "Constellation, Inc." was the name of Lokensgard's employer during the entire duration of his employment, but the parties note that, in October of 2023, Constellation merged into Curi Holdings. (Doc. No. 1-1 ¶ 4; Doc No. 4 ¶¶ 2–4.) Therefore, the Court will refer to both entities as "Defendant."

## STATEMENT OF UNDISPUTED FACTS

### A. Defendant's Employment of Lokensgard

Before merging into Curi, Constellation was a professional liability insurance company for physicians and their organizations. (Doc. No. 23 at 2; Doc. No. 27 at 14–93 [hereinafter Ex. B][2] at 24:3–20.)

One of the roles within Defendant's corporation was "Help Desk Engineer," who were responsible for providing support services to all of Defendant's employees and clients who made requests for assistance with technical issues. (Doc. No. 35-1 at 75:1–13; Doc. No. 35-6 at 7:11–13.) Each time an employee or customer requested assistance from the help desk, a report or "ticket" was created, and a Help Desk Engineer would be assigned to respond to that ticket. (Doc. No. 35-6 at 17:11–13, 18:15–19:7.) Lokensgard worked as a Help Desk Engineer from October 2019 to April 2023. (Doc. No. 23 at 2.) During the relevant time period, Defendant employed two other Help Desk Engineers: Thomas Yang and Marleny Vicioso. (Doc. No. 34 at 7; *see also* Doc. No. 35-7.) As a core function of their job, Help Desk Engineers were expected to make themselves available for ticket assignments by entering themselves into the "call queue." (Ex. B at 77:18–78:15.)

Help Desk Engineers are supervised by a manager whose duties include, among other things, meeting with the Engineers "to discuss performance expectations, [and] evaluate work outcomes and opportunities for professional development." (Doc. No. 35-3

---

[2] Multiple documents were filed together at Docket Number 27, including the transcript of the deposition of Thomas Yang at pages 14–93. The Court cites to the Yang Deposition as "Ex. B" with specific reference to page and line numbers from the transcript.

at 33; *see also* Doc. No. 35-1 at 26:25–27:8, 27:23–28:7.) Lokensgard had five different managers during his employment with Defendant, including Qasim Haji (from April 1, 2023, until termination of employment). (Doc. No. 35-11 at 4–5.) Defendant had a Human Resources Department, which it referred to as its "People Team." (Doc. No. 35-1 at 11:10–15.) The People Team was responsible for compensation planning, managing benefits, job analysis, employee relations, and handling concerns from managers about an employee's performance. (*Id.* at 11:10–15, 36:1–20.) During Lokensgard's employment, Christina Spriggle was the head of the People Team, and Christina Persaud reported directly to Spriggle. (*Id.* at 9:6–22; Ex. 35-2 at 8:1–3.)

Defendant gave its employees unlimited vacation time and encouraged employees to take at least three weeks off per year. (Doc. No. 35-1 at 54:21–55:18.) When employees wanted to take time off, unless it was for a serious medical situation that warranted dedicated time away, employees would utilize Defendant's regular time-off policy, which they called Team Time Management or TTM. (Doc. No. 35-1 at 64:7–20, 54:21–55:2.)

Defendant conducts annual performance reviews for its employees. (Doc. No. 35-1 at 17:24–18:1.) The performance reviews were based upon two assessments—50% was based on "goals" written by the employee and approved by their manager, and the 50% was based on "behaviors," which was anonymous feedback from co-workers collected through a survey. (*Id.* at 35-1 at 42:25–43:18, 47:12–48:15.)

If an employee was failing to meet job expectations, they would typically first receive coaching from their manager on that issue, and afterwards Defendant may put them on a Performance Improvement Plan (PIP). (Doc. No. 35-1 at 22:20–24:6.) Once the

People Team and the manager agreed to put an employee on a PIP, either the People Team or the manager used a template to draft the PIP, and then the People Team and the manager would review and finalize the PIP together. (Doc. No. 35-1 at 38:12–20; Doc. No. 35-2 at 80:3–10.) Defendant may also implement disciplinary action, including, but not limited to, verbal and written warnings, suspension, or termination. (Doc. No. 35-3 at 27.) Defendant also "reserve[d] the right in its sole discretion to omit any or all of these steps or to add or modify steps in a particular situation." (*Id.*)

**B. Defendant's Termination Decision**

While employed at Defendant, Lokensgard and his wife underwent fertility treatments. (Doc. No. 27-1 at 114–215 (hereinafter, "Ex. H"); Ex. H at 166:17–168:15.) Beginning in or around 2022, Lokensgard would occasionally use TTM to take time off for these appointments. (Ex. H at 168:7–25, 169:1–4.) On March 28, 2023, during Haji's first one-on-one meeting with Lokensgard, Lokensgard notified Haji that he would need a time off here and there for these appointments, and that he ultimately intended to use parental leave, as well. (Doc. No. 35-5 at 101:5–13, 178:6–14, 172:10–174:4, 189:11–190:2.) About one week later, on April 5, 2023, Lokensgard sent Haji an email with a list of planned fertility appointments. (Doc. No. 35-19 at 2.) Haji forwarded that email to the People Team that same day. (*Id.*) Initially, Spriggle told Haji that Lokensgard would be able to use TTM for those appointment absences, but, after a phone conversation between Spriggle and Haji, Spriggle sent a follow-up email explaining to Lokensgard that he should use FMLA time for time off due to planned fertility appointments. (Doc. No. 35-20 at 2; Doc. No. 35-19 at 2; Doc. No. 35-22 at 2: Doc. No. 35-1 at 165:11–166:20.)

On April 7, 2023, during a team meeting—attended by Haji, Lokensgard, and two other Help Desk Engineers—one of Lokensgard's coworkers privately messaged Haji that Lokensgard was not in the call queue. (Doc. No. 35-5:14–24, 69:8–11; Doc. No. 35-24 at 2.) Haji did not tell Lokensgard to re-enter the call queue during that meeting, nor did Haji ever have a coaching conversation about being in the call queue. (Doc. No. 35-5 at 71:6–8.) Haji testified that, because he was a new manager, he wanted to learn more about when employees would go in and out of the call queue, so had conversations with the two other Help Desk Engineers about it. (*Id.* at 72:21–74:1.)

On April 13, 2023, during another team meeting, Haji noticed that Lokensgard was out of the call queue and asked the whole team if they had to stay in the call queue during team meetings—to which every team member, including Lokensgard, responded yes. (*Id.* at 75:5–25; Doc. No. 35-26 at 2.) As soon as Lokensgard answered yes to Haji's question, Haji saw Lokensgard put himself back in the call queue. (*Id.*) Haji did not ask Lokensgard why he was not in the call queue. (*Id.* at 76:1–15.) Haji then reached out to the People Team that same day to ask for guidance. (*Id.*) Haji spoke with Spriggle and told her that Lokensgard had removed himself multiple times from the call queue during team meetings. (*Id.* at 77:1–9.) During this conversation Spriggle told Haji that this "may be cause for termination" and to schedule a meeting with Lokensgard for the following Wednesday, April 19, to talk to him about termination. (*Id.* at 77:10–19, 81:2–82:4.)

During the April 19 meeting, Haji and Spriggle asked Lokensgard about his not being in the call queue and Haji testified that Lokensgard "sounded like he didn't care" or that there was "no explanation." (Doc. No. 35-5 at 249:6–13.) Haji also testified that he

"can't think of anything" that Lokensgard could have said that would have led to a different outcome. (*Id.* at 257:23–258:3.) Haji did not reach out to Lokensgard about reasons for not being in the call queue beforehand because the People Team had told him that "there was no need" because the information Haji had given them "was enough." (Doc. No. 35-5 at 252:1–9.) Lokensgard was then terminated during the meeting with Haji and Spriggle.[3] (Doc. No. 35-26; Doc. No. 35-5 at 250:19–251:3.)

Lokensgard initiated this action, asserting the following claims:[4] (1) retribution in violation of the MPLA; (2) marital status discrimination in violation of the MHRA; (3) retaliation in violation of the MHRA; (4) interference in violation of the FMLA; and (5) discrimination in violation of the FMLA.[5] (Doc. No. 34 at 35; *see also* Doc. No. 1-1 ¶¶ 49-83; Doc. No. 1-1; Doc. No. 34.)

---

[3] The Court notes that Lokensgard's termination letter was dated April 18, 2023 but has a termination date of April 19, 2023—the date of the meeting during which Lokensgard was terminated. (Doc. No. 35-26.)

[4] Lokensgard also brought a claim for racial discrimination in violation of the MHRA, but he later agreed to dismiss this claim. (Doc. No. 34 at 32.) While no stipulation of dismissal has been filed, "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). Lokensgard did not respond to Defendant's argument on Count III, and the Court will therefore grant summary judgment for Defendant on that Count.

[5] As discussed below, the Eighth Circuit has recognized three types of FMLA claims: entitlement, retaliation, and discrimination. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005–06 (8th Cir. 2012). In this action, while Count V of the Complaint is titled "interference" and Count VI of the Complaint is titled "retaliation/discrimination," Lokensgard makes clear in his written submissions that he pleaded an entitlement claim and a discrimination claim. (Doc. No. 1-1 at 11–13; Doc. No. 34 at 35 (Lokensgard states that he has brought "two types of interference claims: unlawful violation of the FMLA's entitlement to benefits and FMLA discrimination.").)

## DISCUSSION

Defendant now moves for summary judgment on Lokensgard's five claims, arguing that there is no genuine dispute of material fact that any protected conduct or characteristic played a role in Defendant's decision to terminate employment. (Doc. No. 23 at 14.) The Court first addresses the FMLA claims raised in Counts V and VI, followed by the closely related MPLA retribution claim at Count I. Last, the Court turns to the MHRA claims at Counts II and IV. Given the record presented, the Court grants the motion as to Counts II, IV, and V, but denies it as to Counts I and VI.

As a threshold matter, courts grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the outcome of the suit, and a dispute is genuine if the evidence could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If "the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in their favor." *Anderson*, 477 U.S. at 255. Further, on a motion for summary judgment, "the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).

## I. FMLA ENTITLEMENT CLAIM

At Count V, Lokensgard asserts that, after he notified Defendant of his intent to take FMLA leave in the future, Defendant interfered with his rights under the Act by firing him before any leave began. (Doc. No. 1-1 ¶¶ 74–76; Doc. No. 34 at 35–38.) Lokensgard characterizes this as an FMLA entitlement claim. (Doc. No. 34 at 35–38.) Because the record contains no evidence—and Lokensgard makes no argument[6]—that Defendant actually denied him FMLA leave or that they misclassified TTM time off as FMLA leave, the Court grants Defendant's motion for summary judgment on this claim.

The FMLA entitles employees "to a total of 12 workweeks of leave during any 12-month period for . . . the birth of a son or daughter . . . and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). Under the FMLA, "[a]n employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any right contained in the FMLA." *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)). The Eighth Circuit has conceptually divided FMLA claims into three types: entitlement claims, discrimination claims, and retaliation claims.[7] *Pulczinski*, 691 F.3d at 1005–08. Entitlement claims arise under 29

---

[6] Lokensgard's written submissions include citations to cases from other circuits that do not follow the classification of claims in *Pulczinski*. These authorities are inapposite.

[7] A retaliation claim arises when an employer violates section 2615(a)(2), which protects an employee from punishment for opposing an employer's practice that the FMLA makes unlawful. *Pulczinski*, 691 F.3d at 1005–06; *see also Knight v. Cambria Co.*, 183 F.4th 657, 665 n.3 (8th Cir. 2026). Lokensgard does not raise or attempt to raise such a claim.

U.S.C. § 2615(a)(1) and occur when "an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Id.* at 1005 (citing *Stallings*, 447 F.3d at 1050). Such claims require "the denial of a benefit to which [the employee] is entitled under the statute." *Id.*

In this case, Lokensgard does not contend that Defendant refused a request for leave or misclassified his time off. Rather, he alleges that he notified Defendant of his intent to take leave and that, as a result, Defendant fired him—before his leave began and before he made any specific leave request. (Doc. No. 34 at 38.) Because the record shows no denial of any benefit, the Court grants summary judgment on Count V in favor of Defendant.

## II. FMLA DISCRIMINATION CLAIM

Lokensgard also raises an FMLA discrimination claim, asserting that Defendant terminated his employment, at least in part, because he planned to take FMLA leave. (Doc. No. 34 at 42.) Viewing the facts in the light most favorable to Lokensgard, the Court concludes that remaining questions of fact preclude summary judgment on Count VI.

FMLA discrimination claims are a type of interference claim and occur when an employer takes an "adverse action" against an employee because the employee exercises rights to which they are entitled under the FMLA. *Pulczinski*, 691 F.3d at 1006. For these claims, "the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment." *Id.* An employee pursuing a discrimination claim must "prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Id.* (citing *Sisk v. Picture People, Inc.*,

669 F.3d 869, 900 (8th Cir. 2012) and *Stallings*, 447 F.3d at 1051); *see also Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 n.3 (8th Cir. 2012) (noting that plaintiffs need not establish that the protected activity was the "but for" cause of the termination and explaining that instead, "to establish a causal link between the employee's exercise of FMLA rights and her termination, the employee must prove that an employer's retaliatory motive played a part in the adverse employment action" (citation omitted)).

FMLA discrimination claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005). Under this framework, once a plaintiff can first establish a prima facie case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for their adverse action. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets their burden, then "the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873–74 (8th Cir. 2010).

**A. Prima Facie Case**

"To establish a prima facie case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the [FMLA], (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Hudson*, 787 F.3d at 866 (quoting *Pulczinski*, 691 F.3d at 1007). Moreover, if an employer bases its decision on an honestly held belief unrelated to the FMLA, it is nondiscriminatory even if that belief is mistaken. *Phillips v. Matthews*, 547 F.3d 905, 911 (8th Cir. 2008). In this case, the parties do not

dispute that Lokensgard engaged in protected conduct by notifying Defendant that he may need to take FMLA leave in the near future for medical appointments and eventually for parental leave. Nor do they dispute that Defendant terminated his employment. Rather, the parties dispute whether the record presented contains any questions of fact concerning the third prima facie prong. The Court agrees with Lokensgard that disputed questions of fact regarding causation preclude summary judgment.

Lokensgard directs the Court to evidence of a temporal proximity between the time when he informed Defendant of his need for leave and the time when Defendant made the decision to terminate his employment, arguing that this evidence is sufficient to establish a causal connection. (Doc. No. 34 at 42.) Close temporal proximity can be sufficient to establish a causal connection at the initial *McDonnell Douglas* stage. *See Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833 (8th Cir. 2002) (concluding that two weeks between the employee's protected activity and the employer's adverse action was sufficient to establish causation); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113–14 (8th Cir. 2001) (stating that a "matter of weeks" between disclosure of a potentially disabling condition and adverse employment action was sufficient to demonstrate a prima facie case of discrimination).

Defendant argues that temporal proximity in this case cannot establish causation because the first time Lokensgard explicitly stated his intent to take FMLA leave was on April 17, 2023, which occurred after Defendant asserts that it made the decision to terminate Lokensgard's employment. (Doc. No. 23 at 27–28; Doc. No. 36 at 7.) The evidence presented, however, includes evidence that during the March 28, 2023 meeting

with Haji, Lokensgard declared that he would need periodic time off for his wife's upcoming fertility appointments and that he would ultimately need to use parental leave as well. (Doc. No. 35-5 at 101:5–13, 178:6–14, 172:10–174:4, 189:11–190:2.) In addition, there is evidence that, by April 5, 2023, the People Team was also aware that Lokensgard intended to use FMLA leave.[8] (Doc. No. 35-20 at 2 (indicating that on April 5, 2023, Haji forwarded Spriggle Lokensgard's requests for time off to attend appointments through June and including Spriggle's initial response permitting use of TTM for those absences); Doc. No. 35-22 at 2 (showing Spriggle stating that because these appointments could extend into October, she now believed Lokensgard should "complete FMLA paperwork").)

Viewing the facts and making all reasonable inferences from the facts in the light most favorable to Lokensgard, the Court concludes that there is a genuine dispute of material fact about whether, on March 28, 2023, April 5, 2023, or April 17, 2023, Defendant understood that Lokensgard intended to take FMLA leave to attend fertility appointments and for parental leave.[9]

---

[8] Lokensgard "need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." *Thorson v. Gemini, Inc.*, 205 F.3d 730, 381 (8th Cir. 2000). The employer's duties arise "when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Id* (quotation omitted).

[9] Further, to the extent Defendant is arguing that Lokensgard never properly notified Defendant of when he was taking his leave, the Court notes that whether "an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citing *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999). Here, a fact dispute remains concerning the sufficiency of the notice.

**B. Pretext**

In the alternative to summary judgment in their favor at the prima facie case stage, which the Court denies above, Defendant also seeks summary judgment on the basis that no reasonable juror could find in Lokensgard's favor on the issue of pretext. The parties agree that Defendant has provided the following legitimate reason for termination (*see*, Doc. No. 34 at 23): "Lokensgard's practice of removing himself from the [call] queue, requiring his colleagues to take on more work" (Doc. No. 23 at 11).[10] Thus, the burden shifts to Lokensgard, and the Court must consider whether Defendant's stated nondiscriminatory reason is a pretext for discrimination. *Yellow Transp., Inc.*, 596 F.3d at 873–74. Because of the reasonable inferences a juror could draw from the evidence, including inferences that would support a finding in Lokensgard's favor on the issue of pretext, the Court cannot accept Defendant's alternative basis for summary judgment.

To survive a motion for summary judgment on pretext, the employee need not directly disprove or contradict the exact nondiscriminatory reason stated by the employer, but the employee must "adduce enough admissible evidence to raise genuine doubt as to

[10] The parties present conflicting evidence about Lokensgard's prior job performance. (*Contrast* Doc. No. 23 at 2–5 *with* Doc. No. 34 at 9–11.) This dispute, however, is not material because Defendant's stated nondiscriminatory reason for termination concerns only removal from the call queue during team meetings, not any other aspect of Lokensgard's job performance. (*See* Doc. No. 23 at 18 (stating that "even after efforts to improve Lokensgard's performance, it was time to end his employment because he failed to remain in the call queue."); Doc. No. 35-5 at 224:4–9 (testimony of Haji explaining that the concerning behavior was Lokensgard taking himself out of the call queue during team meetings.).) Thus, the Court does not rely on evidence presented by Defendant concerning Lokensgard's job performance apart from removal from the call queue.

the legitimacy of the [employer's] motive." *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 n.8 (8th Cir. 1994). An employer's otherwise legitimate explanation is pretextual when it is "unworthy of credence," *e.g.*, *Siebrecht v. Mercy Health Servs. - Iowa Corp.*, 163 F.4th 524, 535 (8th Cir. 2026) (quotation omitted), such as when the employer's proffered explanation has no basis in fact, or when the "employer varied from its normal policy or practice to address the employee's situation," *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 867 (8th Cir. 2006) (citations omitted).

In this case, the Court finds that genuine disputes of material fact preclude summary judgment on the element of pretext. First, evidence in the record presented could support a reasonable jury's finding of pretext because of the temporal proximity between Lokensgard notifying his employer of his need to take protected leave and his termination of employment. *See Peterson v. Scott County*, 406 F.3d 515, 525 (8th Cir. 2005) (reversing grant of summary judgment because a two-week gap between termination and the protected activity was sufficient to support a finding of pretext); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir.1997) (reversing grant of summary judgment because a six-month gap between the adverse action and the protected activity was sufficient to permit the inference of a causal connection); *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 (8th Cir. 1995) (reversing grant of summary judgment because the three-month gap between plaintiff's protect conduct and termination, when coupled with the unprecedented job scrutiny the employee faced during those months, permitted the inference of pretext).

Second, in addition to the temporal connection between Lokensgard's statement of intent to take FMLA leave and his termination, *see Green v. Franklin National Bank of*

*Minneapolis*, 459 F.3d 903, 916 (8th Cir. 2006) (observing that in general, something in addition to temporal proximity is required to show a pretextual motive (citation omitted)), the record includes evidence that Defendant customarily tolerated removal from the call queue, and did not terminate employees for such conduct. A reasonable jury can infer pretext "[w]here an employer tolerates an undesirable condition for an extended period of time, and then, shortly after the employee takes part in the protected conduct, takes an adverse action in purported reliance on the long-standing undesirable condition." *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 875 (8th Cir. 2008) (citing *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1079–81 (8th Cir. 2005) (stating that a reasonable jury could infer pretext, where there had been prior complaints about an employee's conduct and the employee was neither disciplined nor informed of the complaints until after they engaged in protected activity.)). Here, Lokensgard's co-worker, Vicioso, testified that Lokensgard had been leaving the call queue during team meeting and that had been going on "for a while." (Doc. No. 35-9 at 74:14–20; 83:17–84:1.) Yang's testimony corroborated this, noting that Lokensgard would leave the call queue when he was in meetings "which he feels requires his attention." (Ex. B at 132:14–16.) More convincingly, at least one of Lokensgard's former managers also remembered that Lokensgard was not in the call queue during team meetings. (Doc. No. 35-4 at 116:25–118:13.) A reasonable jury could, therefore, infer that removal from the call queue while in a team meeting did not always result in termination. Finally, there is no evidence that

Lokensgard was ever disciplined prior to his termination for leaving the call queue during team meetings or coached not to do so. (*Id.* at 118:21–22).)[11]

For these reasons, the Court concludes that genuine disputes of material fact remain concerning whether Defendant's explanation for termination is pretextual, and therefore, the Court denies Defendant's request for summary judgment on Count VI.[12]

## III. MPLA RETRIBUTION CLAIM

The MPLA provides that an employer must "grant an unpaid leave of absence to an employee who is a biological or adoptive parent in conjunction with the birth or adoption of a child." Minn. Stat. § 181.941, subd. 1(a)(1). In addition, the MPLA makes it unlawful

---

[11] A reasonable jury could also question Haji's explanation for not discussing this with Lokensgard. Haji stated that he never discussed it because he "didn't want to make any assumptions or make accusations" and that he was "just trying to understand things" as a new team leader. (Doc. No. 35-5 at 69:2–7.) There is also testimony, however, that team leaders are expected to communicate and "outline" what the protocol is for when they should be in the call queue. (Doc. No. 35-1 at 88:20–89:21.) Haji's explanation is inconsistent with the expectation of communication from managers, and a reasonable jury could make inferences from this that would support a finding of pretext.

[12] The Court also observes that the evidence presented could support a finding that Defendant treated Lokensgard differently from Haji. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (concluding that an employee can raise suspicion of pretext by showing that the employer gave more lenient treatment to similarly situated employees who were not in the protected class). After Lokensgard was terminated, Haji's spouse became pregnant and Haji wanted to attend some of his wife's medical appointments. (Doc. No. 35-5 at 116:12–17; 117:18–21.) Unlike Lokensgard, however, no request was ever made for Haji to take TTM or FMLA time off for those appointments and instead Haji would just "block off two hours" that day to go to the appointment and then come back. (*Id.* at 117:22–118:11.) Viewed in context with the other evidence concerning pretext, treating Lokensgard different from Haji could further support an inference of pretext.

for an employer to "discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against an employee for requesting or obtaining a leave of absence." *Id.* § 181.941, subd. 3. Claims for MPLA retribution are analyzed under the *McDonnell Douglas* burden-shifting framework, and analysis of these claims mirrors FMLA discrimination claims. *Hanson v. Mental Health Resources, Inc.*, 948 F.Supp.2d 1034, 1043 (D. Minn. 2013); *see also Wakasugi v. 3M Co.*, No. A24–1647, 2025 WL 1554775, at *11 (Minn. Ct. App. June 2, 2025) (reversing the district court's denial of summary judgment because plaintiff demonstrated the necessary elements of a prima facie case for an MPLA claim by alleging "close temporal proximity to the adverse action," which "suffices to establish a causal connection" (quotation omitted)).

Both parties make the same arguments here as they did concerning Lokensgard's FMLA discrimination claim. (*See* Doc. No. 34 at 33–43; Doc. No. 36 at 6–13.) Therefore, the Court reaches the same conclusion, and denies summary judgment on Count I because the record contains genuine and material fact disputes regarding causation and pretext.[13]

## IV. MHRA Claims

Lokensgard also raises claims of discrimination on the basis of his marital status (Count II) and of retaliation for engaging in protected activity (Count IV), both in violation

---

[13] Defendant also summarily argues that Lokensgard's MPLA claim fails because Lokensgard "was not a biological parent" at the time of termination. (Doc. No. 23 at 29.) This, however, is not a requirement under the MPLA. *See* Minn. Stat. § 181.941, subd. 1. While an employee's request for leave must be tied to their own biological or adoptive child, the statute does not require that the child already been born, conceived, or adopted at the time an employee requests leave. Defendant does not cite any caselaw, and the Court is aware of none, supporting the interpretation of the statute in this way.

of the MHRA. (Doc. No. 1-1 at 12–14.) MHRA claims that do not involve direct evidence, such as those at issue in this case, are analyzed under a *McDonnell Douglas* framework. *Hanson*, 948 F.Supp.2d at 1047 (citing *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012)). Because Lokensgard fails to establish a prima facie case of either discrimination or reprisal under the MHRA, the Court grants summary judgment in favor of Defendant on Counts II and IV.[14]

**A. Marital Status Discrimination**

The MHRA protects against discrimination based on marital status, prohibiting "discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse." Minn. Stat. § 363A.03, subd. 24; *see also id.* § 363A.08. Minnesota courts have held that an employee has a viable claim for marital-status discrimination under the MHRA where the crux of the claim is that the employee was terminated "based on the identity and situation" of their spouse and that the discrimination need not be directed at the marital status itself. *Aase v. Wapiti Meadows Cmty. Techs. & Servs., Inc.*, 832 N.W.2d 852, 857–89 (Minn. Ct. App. 2013) (citing *Taylor v. LSI Corp. of Am.*, 781 N.W.2d 912, 915–917 (Minn Ct. App. 2010), *aff'd*, 796 N.W.2d 153 (Minn. 2011)).

In this case, Lokensgard claims that Defendant discriminated against him by terminating his employment "because of his wife's fertility issues and/or pregnancy." (Doc. No. 34 at 19.) However, the Court necessarily distinguishes between an adverse

[14] To the extent that Count IV can also be construed as a race discrimination retaliation claim, Lokensgard has waived it by not responding. *See Satcher*, 558 F.3d at 735.

employment action taken because of a request to take leave and an adverse employment action taken because of the underlying reason for that leave. The record presented lacks evidence to suggest that Defendant was motivated by the fact that Lokensgard's wife was undergoing fertility appointments or the possibility that she might become pregnant, as opposed to some reason for Lokensgard to request leave. *See Aase*, 832 N.W.2d at 855 (involving allegations that the employer terminated the employee solely because the employee's spouse served on the board of the employer's primary competitor); *Taylor*, 781 N.W.2d at 914–15 (involving allegations that the employer terminated the employee solely because the employer had relocated her spouse's position). Absent any evidence tying the decision to Lokensgard's wife, as compared to some other reason for his leave request, Lokensgard cannot establish the causal component of a prima facie case of marital status discrimination, and the Court grants summary judgment in favor of Defendant on Count II.

**B. Reprisal**

The MHRA reprisal statute, Minn. Stat. § 363A.15, prohibits reprisal against persons who "opposed a practice forbidden under [the MHRA]" or who "associated with a person or group of persons who are disabled or who are of different race, color, creed, religion, gender identity, sexual orientation, or national origin." Reprisal can take the form of "intimidation, retaliation, or harassment." *Id.* To establish a prima facie case of MHRA reprisal, a plaintiff must show the following three elements: "(1) statutorily protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Hernandez v. Dave & Busters, Inc.*, No. 25-CV-551

(ADM/JFD), 2026 WL 632539, at *4 (D. Minn. Mar. 6, 2026) (quoting *Hoover v. Norwest Priv. Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001)).

Lokensgard argues that he engaged in protected conduct by "disclosing his wife's infertility—a disability" and "requesting leave for his wife's pregnancy—also a disability." (Doc. No. 34 at 33.) In other words, Lokensgard asserts that he associated with someone who was disabled: his wife. As noted above, however, the record contains no evidence that Defendant terminated Lokensgard's employment because of his "association" with his wife or because of her medical needs. Absent such evidence, Lokensgard cannot establish a prima facie case of reprisal, and the Court grants summary judgment in favor of Defendant on Count IV.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein. IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Doc. No. 21) is GRANTED IN PART and DENIED IN PART as follows:

1. The Court grants Defendant's motion for summary judgment as to Counts II, III, IV, and V, and those claims are hereby DISMISSED WITH PREJUDICE.

2. The Court denies Defendant's motion for summary judgment as to Counts I and VI.

Dated: September 29, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court